**In re BUYER'S CLUB MARKETS, INC., Debtor.**

**Bankruptcy No. 89 B 04395 J.**

United States Bankruptcy Court, D. Colorado.

June 12, 1990.

See also, Bkrtcy., 100 B.R. 37.

Joseph G. Rosania, Denver, Colo., for Trustee, H. Christopher Clark.

Gregory J. Anderson, Fairfield and Woods, P.C., Denver, Colo., for the firm and for Chapter 11 Unsecured Creditors Committee.

Louise Romero–Atwood, Boulder, Colo., Brownstein Hyatt Farber & Madden, P.C., Denver, Colo., for Trident Properties Ltd.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Allowance and Payment of Claims filed February 1, 1990, by Trident Properties Limited ("Trident") and the objections thereto filed by the Chapter 7 Trustee, Fairfield and Woods, P.C., and the Chapter 11 Creditors Committee.

The Debtor filed a voluntary Chapter 11 petition on April 5, 1989. The Case was converted to Chapter 7 on October 13, 1989. The Debtor operated retail merchandise outlet stores in the Denver area and Trident was the landlord for one of the stores.

Trident, in its Motion, seeks approval of the following claims:[1]

1. $6,257.72 for pre-petition rent for the period of April 1, 1989 to April 4, 1989 as a general unsecured claim.

2. $93,865.80 for the first 60 days of post-petition, Chapter 11 rent under 11 U.S.C. § 365(d)(3) and asks for immediate payment, with no contingency of recapture.

3. $203,375.90 for the balance of the post-petition, chapter 11 rent under 11 U.S.C. § 503(b)(1).

4. $56,319.48 for post-conversion, Chapter 7 rent under 11 U.S.C. § 365(d)(3). This amount has already been paid by the Trustee, and the parties merely seek an Order ratifying the payment.

5. $574,084.20 for lease rejection damages under 11 U.S.C. § 502(b)(6)(A). The parties agreed to reserve to a later date a determination of the proper amount of this part of the claim.

In its Memorandum of Authority and Points of Law filed May 25, 1990, Trident asserts that it has a "superpriority" claim for all of its rent accruing from and after the filing of the Chapter 11 petition on April 5, 1989. It argues that its post-conversion, Chapter 7 § 365(d)(3) claim is prior to *ALL* claims in the bankruptcy. Next, it argues that its post-petition, Chapter 11 § 365(d)(3) claim is prior to all claims in the bankruptcy *except* other Chapter 7 § 365(d)(3) claims. A "natural consequence", it is asserted, is that all of its § 365(d)(3) claims are payable immediately and are not subject to recapture should there be insufficient funds to satisfy all administrative priority claims. It claims what it calls a "super, super, super" priority claim because of the 1984 amendments to the Bankruptcy Code (Pub.L. No. 98–353, 98 Stat. 333, The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") which added subsections (d)(3) and (d)(4) to section 365 of the Code. Those new subsections read as follows:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within the 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

There is some authority for the proposition that, at least for the first 60 days post-petition, the landlord of nonresidential real property is entitled to a "superpriority" claim. *See, e.g., In re Rare Coin Galleries of America, Inc.,* 72 B.R. 415 (D.Mass.1987). That case held that the landlord must be paid even if there are insufficient funds in the estate to pay all administrative claims. However, the majority of the cases have not gone that far. They have, instead, pointed out that there is a difference between the *timing,* the *allowance,* and the *priority* issues involved in such cases. *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.

---

**1.** The actual proof of claim filed by Trident had slightly different dollars amounts, but the parties agreed in open court that these amounts would constitute Trident's claim.

**702**

Cal.1986); *In re Granada, Inc.*, 88 B.R. 369 (Bankr.Utah 1988); and *In re Orvco, Inc.*, 95 B.R. 724 (9th Cir.BAP 1989).

 This Court agrees with the reasoning and analysis of the court in *In re Granada, Inc., supra,* and adopts the same. That court concluded that § 365(d)(3) rent (for the first 60 days post-petition) must be paid immediately unless the trustee establishes good cause for withholding the payment. There has been no evidence presented to establish good cause herein. However, such a claim for immediate payment does not constitute a superpriority, and any such payment is subject to recapture by the trustee if there are insufficient funds to pay all other administrative claims.

The case *sub judice* has one additional element not present in *In re Granada, supra,* i.e. this case was converted from Chapter 11 to Chapter 7, thus bringing into play § 726(b). That section does give a superpriority to Chapter 7 administrative expenses *over* Chapter 11 administrative expenses. This "superpriority" status is, as was pointed out in *In re Granada, Inc., supra,* one of the only three "superpriorities" provided for by Congress. The others are § 364(c)(1) claims given to postpetition lenders when the debtor is unable to obtain unsecured credit and § 507(b) claims when adequate protection under § 361 fails. This Court can find no authority for the proposition that a claim for rent under § 365(d)(3) has priority over the specifically mandated priority under § 726(b).

 This Court thus concludes that (1) the $56,319.48 (Item No. 4, *supra*) already paid for post-conversion rent shall be allowed as a Chapter 7 administrative expense, subject to recapture should there be insufficient funds to pay all Chapter 7 administrative expenses; (2) there being no just cause shown for delay in the payment of $93,865.80 (Item No. 2, *supra*) for the first 60 days of post-petition Chapter 11 rent, the Trustee shall forthwith pay such amount to Trident, which amount shall be allowed as a Chapter 11 § 503(b)(1)(A) administrative expense, but which shall be subject to recapture should there be insuf-

ficient funds to pay all Chapter 7 administrative expenses and all Chapter 11 administrative expenses; (3) the balance of the Chapter 11 rent of $203,375.90 (Item No. 3, *supra*) shall be allowed as a Chapter 11 § 503(b)(1)(A) administrative expense which shall be paid by the Trustee in the due course of administration of the estate, but which is subject to the prior full payment of all Chapter 7 administrative expenses; (4) the $6,257.72 (Item No. 1, *supra*) for pre-petition rent shall be allowed as a general unsecured claim; and (5) the validity and amount of the claim for $574,084.20 (Item No. 5, *supra*) for lease rejection damages is reserved for later determination at such time as any party may, by proper motion, request.

IT IS SO ORDERED.