
FILED

JUL 30 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1206-LKuF |
| GWENDOLYN WASHINGTON, | Bk. No. 6:17-bk-15102-MH |
| Debtor. | |
| GWENDOLYN WASHINGTON, | |
| Appellant, | |
| v. | **OPINION** |
| REAL TIME RESOLUTION, INC., as agent for Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – July 30, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark D. Houle, Bankruptcy Judge, Presiding

Appearances:    Jenny L. Doling of Doling Shaw & Hanover, APC argued for Appellant Gwendolyn Washington; Renee M. Parker of The Mortgage Law Firm, PLLC argued for Appellee Real Time Resolution, Inc., as agent for Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2.

Before: LAFFERTY, KURTZ, and FARIS, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

**INTRODUCTION**

Appellant-Debtor Gwendolyn Washington obtained a chapter 7[1] discharge, which extinguished her personal liability on the debt secured by a junior lien on her residence. About five years later, she filed a chapter 13 case; she obtained an order valuing at zero the junior lien held by Option One Mortgage Corporation, serviced by Appellee Real Time Resolutions, Inc. ("RTR"). RTR filed an unsecured claim in the full amount of the debt it believed it was owed; Ms. Washington objected on the ground that her

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

personal liability had been discharged. The bankruptcy court overruled the objection, concluding that the discharge did not fully eliminate the claim and that the plain language of § 506(a) required the allowance of RTR's unsecured claim in the amount of $307,049.79.

We REVERSE.

## FACTUAL BACKGROUND

In 2012, Ms. Washington obtained a chapter 7 discharge, eliminating her personal liability on a debt secured by a second deed of trust on her residence in Corona, California. In June 2017, Ms. Washington filed this chapter 13 case. In her schedules, she valued her residence at $410,000, encumbered by a first mortgage in favor of Wells Fargo Home Mortgage in the amount of $577,069.53 and a second deed of trust in favor of RTR in the amount of $174,000. She then filed a "Motion to Avoid Junior Lien on Principal Residence," seeking to have RTR's lien valued at zero.[2] RTR did not oppose the motion, and the bankruptcy court granted it.[3] At the same

---

[2] Ms. Washington's motion was submitted on the approved form of the Bankruptcy Court for the Central District of California, which is entitled "Motion to Avoid Junior Lien on Principal Residence [11 U.S.C. § 506(d) ]." However, because avoidance would not have occurred until Ms. Washington had completed her plan, we refer to the motion as one "to value lien at zero." *See Asset Mgmt. Holdings, LLC v. Hernandez (In re Hernandez)*, BAP No. CC-16-1228-LKuF, 2017 WL 1395741, at *1 n.3 (9th Cir. BAP Apr. 11, 2017), *aff'd*, 754 F. App'x 632 (9th Cir. 2019).

[3] The order granting the motion valued the residence at $410,000, encumbered by a first deed of trust in the amount of $606,774.64. Avoidance of RTR's lien was contingent upon Ms. Washington receiving a discharge in the chapter 13 case.

hearing, the court confirmed Ms. Washington's chapter 13 plan, which provided for payment of 100 percent to holders of allowed general unsecured claims.

Thereafter, RTR filed a proof of claim, asserting a secured debt of $307,049.79. Ms. Washington filed an objection to RTR's claim in which she asserted that the claim needed to be amended or withdrawn because Ms. Washington had discharged the debt to RTR in her chapter 7 case. RTR did not file a response, but it amended its proof of claim to reclassify the claim as unsecured. After a hearing, the court issued a memorandum decision and order overruling Ms. Washington's objection and allowing RTR's claim as amended. *In re Washington*, 587 B.R. 349 (Bankr. C.D. Cal. 2018). The court found that the plain language of § 506(a)[4] requires that the valuation of a lien under that section **must** result in an unsecured claim that had to be provided for in the chapter 13 plan. The court noted that there was a split of authority on the issue but found persuasive the cases holding that even where a debtor had discharged her personal liability on a secured claim in a chapter 7 case, a creditor whose lien was valued at zero in a subsequent

[4] Section 506(a) provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

4

chapter 13 case was entitled to an unsecured claim. *E.g., In re Akram*, 259 B.R. 371 (Bankr. C.D. Cal. 2001).

The court also noted that the language of the Central District of California's form motion and order for valuation of a lien supported its conclusion. The form motion used by Ms. Washington, dated December 2012, included the following language: "Respondent's claim on the junior position lien **shall be allowed as a nonpriority general unsecured claim** in the amount per the filed Proof of Claim." (Emphasis added.) The form order granting the motion, dated December 2013, states: "The claim of the junior lienholder is to be treated as an unsecured claim and **is to be paid through the plan pro rata with all other unsecured claims**." (Emphasis added.)[5]

Accordingly, the court concluded that RTR was entitled to an allowed unsecured claim for the entire amount of the debt. Ms. Washington timely appealed the court's order overruling her objection.

In November 2018, the bankruptcy court dismissed Ms. Washington's case for failure to submit to the chapter 13 trustee copies of her 2017 federal and state tax returns. RTR moved to dismiss the appeal as moot. A BAP motions panel denied the motion to dismiss because the bankruptcy court's

---

[5] As discussed below, both forms were revised, effective December 2017. The forms now include the words "unless otherwise ordered" to preface the quoted provisions.

decision as to claim allowance could have preclusive effect in a future proceeding with respect to the claim. *See Bevan v. Socal Commc'ns Sites, LLC (In re Bevan)*, 327 F.3d 994, 997 (9th Cir. 2003).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in overruling Ms. Washington's objection to RTR's claim.

## STANDARD OF REVIEW

As the issue on appeal is solely an issue of law, our review is de novo. *See Veal v. Am. Home Mortg. Serv., Inc. (In re Veal)*, 450 B.R. 897, 918 (9th Cir. BAP 2011). "When we conduct a de novo review, we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572–73 (9th Cir. BAP 2011) (citations omitted).

## DISCUSSION

Section 1322(b)(2) of the Bankruptcy Code prohibits a chapter 13 plan from modifying the rights of holders of secured claims when the claim is "secured only by a security interest in real property that is the debtor's principal residence . . . ." Despite this prohibition, the Ninth Circuit Court

6

of Appeals has held that if such a lien is determined to be wholly unsecured, a debtor may avoid that lien in a chapter 13 proceeding without running afoul of § 1322(b)(2). *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002).

A chapter 13 debtor seeking to avoid a wholly unsecured lien on her residence must first obtain an order valuing the lien pursuant to § 506(a). If the lien is determined to be wholly unsecured (i.e., if the value of the property less senior liens leaves no equity to which the junior lien may attach), the court values the lien at zero.[6] Under § 506(a), the valuation of that lien results in an unsecured claim for the full amount owed. Where the debtor has not previously received a discharge, the junior lienholder will ordinarily be left with an allowed unsecured claim that must be provided for in the debtor's plan in the same manner as other general unsecured claims.

But where the debtor has discharged her personal liability in a prior chapter 7 case, courts have differed in their approaches to dealing with the unsecured claim. Some courts, including *In re Gounder*, 266 B.R. 879 (Bankr. E.D. Cal. 2001), *aff'd*, No. CIV.A. S-01-1707-WBS, 2001 WL 1688479 (E.D. Cal. Dec. 19, 2001), and *Akram*, have concluded that such an unsecured

---

[6] The lien is not actually avoided, however, until the debtor completes her plan and obtains a discharge. If the debtor is not eligible for a chapter 13 discharge, the lien is avoided when the debtor completes her payments under the plan. *See HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 493 (9th Cir. 2015).

claim must be provided for in the debtor's plan despite the discharge.

In *Akram*, relied upon by the bankruptcy court in this case, the bankruptcy court ruled that where (1) debtors had received a chapter 7 discharge of their personal liability for debts secured by junior liens on their residence, and (2) those junior liens were valued at zero for purposes of confirming a subsequent chapter 13 plan, those debtors were required to pay the resulting unsecured claims in their plan. The court reasoned that, although the chapter 7 discharge eliminated the debtors' personal liability on the claims, it did not eliminate the liens themselves, citing *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). As a result, when the debtors filed their chapter 13 case, the junior liens were fully secured. And when the court subsequently valued the liens at zero pursuant to § 506(a), the secured claims were reclassified as unsecured claims. *In re Akram*, 259 B.R. at 378-79.[7]

Subsequent "chapter 20" cases reaching the same result have relied upon the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S.

_____

[7] We note that this Panel has previously cited *Akram* favorably, albeit in a slightly different context. *Cal. Fidelity, Inc. v. Eaton (In re Eaton)*, BAP No. EC-05-1261-PaNMa, 2006 WL 6810924 at *6 (9th Cir. BAP February 28, 2006). The primary issue in *Eaton* was whether the bankruptcy court had erred in valuing a junior creditor's lien as of the petition date. The bankruptcy court's order also valued the unsecured claims at zero because the debtors had previously received a chapter 7 discharge. In its memorandum, the Panel stated that it disagreed with the valuation of the unsecured portions at zero. Citing *Akram*, the Panel concluded that the junior lienholders whose liens had been valued at zero were entitled to be paid as unsecured creditors under the plan. *Id.*

78 (1991). *E.g., In re Gounder*, 266 B.R. 879 (discussed below). *See also Victorio v. Billingslea*, 470 B.R. 545, 550–51 (S.D. Cal. 2012); *In re Renz*, 476 B.R. 382, 392 (Bankr. E.D.N.Y. 2012).

In *Johnson*, the Supreme Court held that the chapter 7 discharge does not eliminate a secured creditor's in rem rights against real property in a subsequent chapter 13 case, and the in rem remedy constitutes a claim against the property in that chapter 13 case. Relying on that holding, the *Gounder* court reasoned that even though the creditor could not enforce its claim against the debtor personally, as of the petition date it retained its right to satisfy its claim against the debtor's property, which had become property of the estate. *In re Gounder*, 266 B.R. at 881. Accordingly, the court concluded, the creditor has an allowable claim in the chapter 13 case as a claim against the **estate**. *Id.*

In contrast to the above-cited cases, the bankruptcy court for the Northern District of California has held that in the chapter 20 context, a junior lienholder whose secured claim has been valued at zero in the chapter 13 case is **not** entitled to an unsecured claim. *In re Rosa*, 521 B.R. 337 (Bankr. N.D. Cal. 2014). The *Rosa* court acknowledged that, pursuant to *Johnson*, a lienholder has an in rem claim remaining after a chapter 7 discharge of a debtor's personal liability. But it concluded that neither *Johnson* nor the Bankruptcy Code, including § 506(a)(1), mandates that the creditor has an **allowed** unsecured claim as a result of the valuation of its

9

lien at zero. *Id.* at 339-40. *See also In re Sweitzer*, 476 B.R. 468 (Bankr. D. Md. 2012).

The court noted the distinction between a "claim" and an "allowed claim," pointing out that under § 502(b) the bankruptcy court is to determine the amount of the claim and allow it unless it is unenforceable against the debtor and property of the debtor. *In re Rosa*, 521 B.R. at 340. Under § 524, the chapter 7 discharge enjoins enforcement of the claim against the debtor personally, and nothing in the Bankruptcy Code authorizes resurrecting the creditor's in personam rights. *Id.* at 340-41. Nor, the court concluded, is there any basis for the conclusion that the elimination of the debtor's personal liability results in the imposition of liability on the estate:

> The court respectfully disagrees with [the *Gounder* court's] attempt to impose liability on the Chapter 13 bankruptcy estate where none exists for the Chapter 13 debtor. Bankruptcy Code § 101(10) defines the term "creditor" as an entity "(A) . . . that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) . . . that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(I) of this title; or (C) . . . that has a community claim." All the creditors at issue in *Akram, Gounder*, and herein fall squarely—and only—within § 101(10)(A). There is no language in § 506(a) which suggests otherwise. In other words, if these creditors do not have an allowable unsecured claim against the Chapter 13 debtor, they do not have an allowable unsecured claim that must be paid through the

Chapter 13 plan. Moreover, Congress knows how to turn a nonrecourse claim into a recourse obligation (see § 1111(b)(1)), and no such text can be found in § 506(a)(1).

*Id.* at 341-42.

The court also observed that its decision did not run afoul of *Johnson* because the Supreme Court in that case did not mandate that the in rem claim becomes an allowed unsecured claim if a § 506(a) motion renders the secured claim valueless. *Id.* at 342.

Importantly, this Panel has held that, for eligibility purposes, debts for which in personam liability has been discharged in a prior chapter 7 case cannot be counted toward the unsecured debt limitation of § 109(e). *Free v. Malaier (In re Free)*, 542 B.R. 492, 497 (9th Cir. BAP 2015). Although *Free* deals with eligibility, its analysis is on point with the issue raised here. In that case, the debtors had received a chapter 7 discharge and then filed a chapter 13 case, intending to strip off two junior liens from their real property. The bankruptcy court granted the chapter 13 trustee's motion to dismiss the case because debtors' unsecured debts, including the two wholly unsecured junior liens, exceeded the statutory limit of § 109(e). The Panel reversed and remanded.

Observing that § 101(12) defines a "debt" as "liability on a claim," and § 101(5)(A) defines a "claim" as a "right to payment," the Panel concluded that there could be no unsecured debt unless the creditor has a

right to payment on an unsecured basis. Because § 524 provides that the discharge operates as an injunction against enforcement of a debt as a personal liability of the debtor, the creditor has no right to payment and thus has no claim. Accordingly, "debts that were discharged in chapter 7 are not 'unsecured debts'" for purposes of § 109(e). *Id.* at 496.

The Panel concluded that the bankruptcy court had misread *Johnson*, observing that the Supreme Court had made only one determination, that "the *in rem* right to proceeds from a sale of its collateral meant the secured creditor held a claim which could be addressed in a chapter 13 plan." *Id.* at 497. The Panel further noted that the Supreme Court in *Johnson* had actually confirmed that the effect of the chapter 7 discharge was to extinguish the debtor's in personam liability. *Id.*

Notably, the *Free* Panel observed that the "well-reasoned decision of the bankruptcy court" in *Rosa* supported its opinion. The Panel restated the *Rosa* court's analysis as follows:

> The [*Rosa*] court observed that although § 101(5)(A) defines a claim and § 506(a) prescribes how a secured claim is to be treated, neither determined whether such claim was allowed for payment purposes. That determination was to be made if an objection was filed under § 502(b), as the debtor filed here. Because the personal liability had been discharged in the prior chapter 7, the court applied the discharge injunction provided by § 524(a)(2) to come to the unremarkable conclusion that no allowed claim remained for payment purposes in the chapter 13.

*Id.* at 500.

Based on the foregoing, we conclude that the bankruptcy court here skipped, as did the cases it relied on, a critical step in determining the status of the unsecured claim. Once the bankruptcy court valued the secured claim at zero under § 506(a), it concluded that the remaining unsecured claim was automatically an allowed claim in the chapter 13 case. But in light of Ms. Washington's claim objection, the court was required to consider whether the unsecured claim was enforceable against the debtor. Because it was not, the claim should have been disallowed. There is simply no statutory basis for resurrecting the debtor's personal liability or for treating the claim as a claim against the estate. *In re Rosa*, 521 B.R. at 339, 342-43. And the lien claim against property of the estate was conditionally avoided through the valuation motion.

RTR argues that we cannot consider *Free* because Ms. Washington did not cite that case in the bankruptcy court. While we generally do not consider arguments not made to the bankruptcy court, there is an exception to that rule when the issue is purely one of law, and the opposing party will suffer no prejudice as a result of the failure to address the issue in the bankruptcy court. *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004). Those criteria are met here, and RTR does not allege otherwise. RTR also attempts to distinguish *Free* on grounds that it is an eligibility case. But RTR points to no part of the *Free* analysis that cannot logically be applied to the facts of this case.

13

We also reject the notion that the bankruptcy court's form motion and order play any part in the analysis. As noted, the forms used by Ms. Washington to value RTR's lien contained language requiring the unsecured portion of a bifurcated claim to be "allowed" (motion) and "paid" (order) as an unsecured claim under the chapter 13 plan. But local rules and forms must be consistent with the Bankruptcy Code and may not enlarge, abridge, or modify any substantive right. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 784 (9th Cir. 2007); *Steinacher v. Rojas (In re Steinacher)*, 283 B.R. 768, 772 (9th Cir. BAP 2002); *see also Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238, 241 (9th Cir. BAP 2008) ("When an Official Bankruptcy Form conflicts with the Code, the Code always wins."); *Moncur v. Agricredit Acceptance Co. (In re Moncur)*, 328 B.R. 183, 192 (9th Cir. BAP 2005) (holding that it is impermissible for a local alteration in an Official Form to have the effect of varying the terms of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure). The local bankruptcy forms at issue simply do not address the situation where a debtor has previously discharged her personal liability on the underlying debt. To interpret them otherwise would be to impermissibly abridge the debtor's rights under § 524, which operates as an injunction against collection of a discharged debt.

Moreover, as noted, the Bankruptcy Court for the Central District of California modified the relevant forms effective December 2017. The form

14

motion (F 4003-2.4.JR.LIEN.MOTION) now provides: "Unless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims in Class 5A of the Plan." The form order (F 4003.2.4.JR.LIEN.ORDER) now provides: "Unless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims in Class 5A of the Plan." The addition of the phrase "unless otherwise ordered" leaves open the possibility that the unsecured claim resulting from the valuation of the lien under § 506(a) may not be allowed or paid, thus undercutting the bankruptcy court's reliance on the local forms as bolstering its ruling.

## CONCLUSION

For all of these reasons, we REVERSE.